BEICHSLICH *v.* BEICHSLICH.

Opinion delivered April 30, 1928.

*Robert L. Rogers,* for appellant.

*Carmichael & Hendricks,* for appellee.

SMITH, J.    Flora Beichslich, in her own right and as next friend of her two infant children, brought a suit in the Pulaski Chancery Court in which she alleged that she was the widow of August Beichslich, who departed this life September 15, 1924, and was survived by the infant children in whose behalf she sued.    For her cause of action she alleged that, about three and one-half years before instituting the suit, the defendant, Sophie Beichslich, gave to her son, plaintiff's husband, a ten-acre tract of land, and that, pursuant to this gift, the donee entered upon the land, caused it to be surveyed and to be laid off by plowing around it, and later built thereon a residence at his own cost of between $800 and $900. That, after the erection of the residence, her husband lived there with his family until his death.    It was further alleged that, by inadvertence and oversight, no deed was ever made from the defendant, Sophie Beichslich, to her son August, but that he acquired title under the gift and his possession of the land thereunder, and owned the land at the time of his death, and that the children of her husband inherited the title thereto upon the death of their

father, subject to her homestead and dower rights, and that the land was the homestead of her infant children. Judgment against the defendant was prayed, divesting the title out of defendant and vesting it in the plaintiffs.

An answer was filed, in which it was alleged that defendant gave her son August permission to erect a residence on the land, with the right to occupy it for his natural life, or so long as he wished. Defendant denied that she gave the fee title to her son, but alleged that she had given him a life estate, or the right to occupy the land as long as he wished to do so.

The testimony is in irreconcilable conflict. The widow herself testified that defendant gave the land to her son, and that he and the witness built the residence with their own money, except some small loans made to the donee by his mother; that her husband expended between $400 and $500 of his own money in the erection of the residence, and that $110 of witness' money was employed for the same purpose. Witness exhibited various receipted bills for material used in the construction of the building, which her husband had paid, and carpenters and other laborers testified that they had done work on the building for which they had been paid by August Beichslich. The value of the building was about $800 or $900.

Defendant owned a small tract of land, consisting of 35½ acres, through which a railroad ran, cutting off a portion of the land containing 5.61 acres from the remainder, and a plat of a survey, made April 13, 1922, was introduced, showing a survey of ten acres of the main body of the land, and it was on this ten acres that August Beichslich built his house. It was shown that the land was so plowed soon after the survey as to mark the boundaries thereof. A witness named Smith testified that he asked August Beichslich, after the erection of the building was begun, if his mother had given him a deed, and Beichslich answered, "No, not yet, but she will." And a brother of the plaintiff gave testimony

of similar purport. Objection was made to the admission of this testimony.

In the case of *Waldroop* v. *Ruddell,* 96 Ark. 171, 131 S. W. 670, it was said that, ''while it has been held that declarations of a decedent going to show the character and extent of his possession are competent, declarations as to title are not competent, for the reason that they are self-serving declarations. *Seawell* v. *Young,* 77 Ark. 309, 91 S. W. 544; *Jeffrey* v. *Jeffrey,* 87 Ark. 496, 113 S. W. 27.'' See also *Parks* v. *Thomas,* 138 Ark. 70, 210 S. W. 141, where a number of cases on the subject are cited; and *Beattie* v. *McKinney,* 160 Ark. 81, 254 S. W. 338.

We are of the opinion therefore that the testimony of the witness Smith and that of plaintiff's brother is without probative value in so far as it relates to the title which the decedent claimed, and there is no controversy about the character and extent of his possession, as he was in the exclusive possession of the ten acres in litigation. The question is, by what title did the deceased hold? And the self-serving declarations of the deceased occupant may not be proved to establish that fact.

Mrs. Cochran, a sister of the plaintiff, testified that defendant told witness that she had given her son the ten acres, and was going to make him a deed to that land.

The testimony on behalf of defendant was to the effect that she was a widow, sixty-six years old, and that she was dependent on her thirty-five-acre farm for her living, and that she had three other children besides her son August. That August was a bootlegger; but his widow testified that he had not made any money out of that business, but that he made money raising and selling hogs. Defendant desired her son to live near her, and, as an inducement, offered to give him the ten acres for his life, or so long as he wished to live there, and offered also to assist him in building a house thereon. Prior to this gift August Beichslich had lived on the five-acre portion of the tract, in a building to which all the witnesses referred as a ''shack.'' August Beichslich bought

one of the buildings at Camp Pike, for which he paid $100, and dismantled it, and the material from that building went into the construction of the residence. Most of the other money used in the building was furnished by defendant, who was shown to have had in bank at all times a deposit exceeding the cost of the building, and, in addition, she had $390 in a bag at her home, which had belonged to her husband. Defendant testified that she gave her son the money to pay the bills for labor and materials; that at times she gave him money and at other times she gave him checks. She did not produce the checks, as she testified that they were lost or destroyed. Defendant also testified that she never gave or promised to give her son anything more than a life estate in the land.

Defendant was corroborated by the testimony of her sons, A. H. and Ernest Beichslich, her son-in-law, Raymond Wright, and her daughter, Mrs. Wright, and her daughter-in-law, Mrs. A. H. Beichslich. The testimony of these witnesses is to the effect that the defendant, Mrs. Sophie Beichslich, had given to her son August only a life estate in the ten acres, and it was so understood by all the members of the family. These witnesses also testified that the erection of the building progressed intermittently, and that, when August had spent the money given him by his mother, the work would be discontinued until she gave him more.

A Mrs. Larch, a neighbor, appears to be one of the few disinterested witnesses in the case whose testimony is material. She testified that she asked August, after one of the periods of suspension of the work, why he did not finish his house, and August answered that he had nothing to finish it with. Witness said to him, "You know your mamma will let you have the money to finish the house," and August answered that he knew she would, but he had been to her for money so often that he was ashamed to ask for any more.

At the time of August Beichslich's death, in September, 1924, he was residing in the residence on the ten-acre

tract, and his wife continued to live there with her two children until February, 1925, when she left. She testified that she received a notice from defendant to vacate, and that she vacated the house in response to this notice, and brought this suit February 28, 1925. Defendant denied that she had given any such notice. A local attorney was called as a witness to explain the confusion about the notice, and he testified that he had been employed by a client, who he supposed to be the defendant, but had never seen before, to write the notice preparatory to bringing suit to eject plaintiff. His client did not again report to him, and no suit was brought. The attorney identified the plaintiff herself as the person who had employed him to prepare the letter which he addressed to plaintiff demanding the surrender of the land. Plaintiff denied that she had seen the attorney before the trial, but his identification of her as the person procuring him to write the letter was positive. This is a circumstance which cannot be ignored in testing the good faith and credibility of the witnesses. The date of this letter was February 26, 1925, and soon thereafter plaintiff vacated the property, and on March 7, 1925, she married her present husband.

The court below granted the relief prayed, but declared a lien in defendant's favor for the amount of certain advances made by her to her son in the construction of the building.

The testimony, which we have carefully considered, leaves us in grave doubt whether defendant ever gave her son this land in fee, and we are therefore constrained to reverse the decree of the court below.

In the case of *Beattie* v. *McKinney*, 160 Ark. 81, 254 S. W. 338, which was a controversy between a brother, who was in possession of a tract of land which he claimed had been given him by his mother, and his sister, who was the only other heir of their mother, it was said:

"The next question is whether G. A. C. Beattie acquired title by a parol gift from his mother. We have set out the substance of the testimony of respective par-

ties on that issue, and it appears to be of about equal weight. Counsel for appellant say that, the testimony being of about equal weight, the defendants should prevail, as the burden of proof is on the plaintiff. But the burden of proof is not upon the plaintiff to show there was no gift to G. A. C. Beattie by his mother. This was an affirmative defense, and the burden of establishing it was upon the party who pleaded it, and this burden could not be discharged by a mere preponderance of the evidence. The existence of a parol gift of land is one of those things which cannot be established by a bare preponderance of the evidence. It is required that such a gift be established by evidence that is clear and satisfactory, and the evidence in this case does not meet that requirement. *Meigs* v. *Morris,* 63 Ark. 100, 37 S. W. 302; *Young* v. *Crawford,* 82 Ark. 33, 100 S. W. 87.''

What was there said is applicable here. The testimony does not measure up to the standard required in the case cited, and the decree of the court below will be reversed and remanded, with directions to dismiss the complaint. It is so ordered.