THACKER *v.* HICKS.

4-8942                                               224 S. W. 2d 1

Opinion delivered October 24, 1949.

Rehearing denied November 28, 1949.

*W. Leon Smith,* for appellant.

*Cecil Grooms,* for appellee.

MINOR W. MILLWEE, Justice. This is an action in forcible entry and unlawful detainer by appellants, L. F. Thacker and W. T. Kitchen, against appellees, Steve Hicks and wife, Tommie Hicks. This is the second appeal of the case. On the former appeal in *Thacker* v. *Hicks,* 213 Ark. 822, 212 S. W. 2d 713, we held there was substantial evidence to support the verdict and that there was no error in the giving and refusing of instructions, but the cause was reversed on account of the admission of certain testimony prejudicial to appellants.

Appellant, L. F. Thacker, originally instituted an action in forcible entry and detainer against appellees in September, 1946, alleging that he was lessee of a large acreage of farm lands, including the Frl. North ½ of the SE ¼ of Sec. 29, Township 18 North, Range 8 East in Greene County, containing 44.82 acres, which appellees forcibly and unlawfully occupied and refused to vacate. In February, 1947, appellant, W. T. Kitchen, intervened and asserted that the term of Thacker's lease had expired and that Kitchen had succeeded to Thacker's rights by virtue of a lease from the owner, Lester Kent. On October 6, 1947, Kitchen filed an amended complaint and intervention setting up unlawful detainer as an additional cause of action under an alleged oral rent agreement for the year 1946 between Thacker and appellees.

In their answer appellees denied generally the allegations of the complaint and asserted title and right to possession of the lands by adverse possession. Having been removed from the lands by the sheriff under a writ executed on February 19, 1947, appellees also asked for restitution of possession and damages.

The first trial resulted in a verdict and judgment for appellees for restitution and damages in the sum of $250. A similar result followed the trial from which comes this appeal, except that the amount of damages was fixed at $300.

The evidence at both trials was substantially the same and tended to show that appellees moved on the lands in controversy in 1931; that they erected improvements thereon and cultivated a part of the lands under claim of absolute ownership until 1941. In December, 1941, Charles Davidson, an employee of a lessee of the record owner of the lands, filed an affidavit in the probate court that appellees were insane. After examination, appellees were adjudged insane and committed to the State Hospital where they remained for approximately four months. Immediately after execution of the commitment, Davidson moved on the property in controversy, and tenants of lessees of the record owner remained in possession until the latter part of 1945 or the early part of 1946, when appellees, finding the property vacant, moved back on the land where they resided until evicted in February, 1947.

On the second trial appellants introduced a complaint, summons, writ of possession and default judgment in ejectment rendered against appellee, Steve Hicks, on March 4, 1941, in favor of the purported record owners of the lands in controversy. There is no evidence of service of the writ of possession and, as heretofore stated, appellees were removed from the lands under the insanity proceedings in December, 1941.

After remand of the case on the first appeal, Lester Kent, the alleged record owner, filed an ejectment suit against appellees on October 2, 1948. When the instant suit came on for trial October 13, 1948, service had not ripened in this ejectment action and appellees had not pleaded thereto. Appellants filed a ''Plea in Bar'' alleging that a determination of the new ejectment suit by the purported record owner would determine the issues in the instant case, because appellees' defense herein was based on a claim of title by adverse possession and a denial of title in appellants' lessor. The pendency of the ejectment suit was pleaded as a bar of appellees' right to maintain their cross-complaint in the present action, and it was prayed that the instant case be continued until the ejectment suit could be tried.

The action of the trial court in overruling the plea in abatement and proceeding with the trial of the forcible entry and unlawful detainer action is the first ground urged by appellants for reversal of the judgment. It is insisted that appellees' claim of adverse possession and denial of title in appellants' lessor could only be finally determined in the ejectment suit. It will be noted that appellants are not claiming title to the lands in controversy and chose forcible entry and unlawful detainer as the proper form of action. The alleged record owner has not seen fit to intervene in the instant suit nor have appellants requested a consolidation of this action with the ejectment suit. If the record owner had intervened in this suit, the actions of forcible entry and unlawful detainer and ejectment could have been properly consolidated. *DeClerk* v. *Spikes,* 206 Ark. 1004, 178 S. W. 2d 70.

Section 34-1519, Ark. Stats. (1947), provides that in actions of forcible entry and unlawful detainer the title to the lands shall not be adjudicated, nor proved, except to show the right to possession and the extent thereof. Section 34-1520 provides that a judgment in a forcible entry or unlawful detainer action shall not bar a suit in ejectment. Under § 34-1522, an ejectment action may be instituted and prosecuted during the pendency of an action in forcible entry and unlawful detainer. In *Necklace* v. *West,* 33 Ark. 682, appellant contended that his action in unlawful detainer should be treated as one in ejectment and, in construing the above sections of the statute, the court said: "Counsel for appellant submits that the complaint contains all the material allegations requisite in a complaint in ejectment, and that under the code practice he ought not to fail in the suit because of a mistake in the proper form of action.

"This may be true as a general rule, but it would be an unjust application of the rule to allow a plaintiff to bring the statutory action of unlawful detainer, deprive defendant of possession of the premises in advance of a trial, fail upon a trial to prove his right to maintain the action, and then avoid the consequences of the mistake, and defeat the defendants claim to damages under the

statute for having been wrongfully dispossessed in a summary mode, by taking judgment in ejectment.

"That the statute did not intend to substitute unlawful detainer for ejectment, is manifest from its provisions that a judgment in the former action shall be no bar to the latter, and that ejectment may be brought during the pendency of unlawful detainer. . . ."

The setting of the docket and granting or refusing a continuance is a matter within the sound discretion of the trial court. We find no abuse of that discretion in requiring appellants to retry the instant suit which they instituted more than two years before.

It is next insisted that the court erred in the admission of testimony by various witnesses to the effect that appellees had been claiming the lands in controversy as their own since 1931. It is conceded by appellants that declarations by one in possession of real property, although self-serving, may be admissible as a part of the *res gestae*, but it is now insisted that such testimony is inadmissible unless the party offering it lays the proper foundation therefor by first showing the time, place and circumstances of the making thereof. Appellants did not object to the testimony on this ground at the trial. They rely on the case of *Strickland* v. *Strickland*, 103 Ark. 183, 146 S. W. 501. That case involved an ejectment action in which one of the parties attempted to attack the deed of the other as a forgery by self-serving declarations of one who was not in possession of the land at the time the declarations were made. The court held that such declarations were not admissible to destroy the record title, but said: "Such declarations made by a person in possession are competent simply to explain the character and extent of the possession in a given case."

The question of title is not involved in the case at bar except to show the right and extent of possession. It is held generally that declarations of a person in possession of land showing that he held in his own right and not as the agent of another are admissible on the

principle of res gestae. 36 C. J. S., Forcible Entry and Detainer, § 55 b (1); 31 C. J. S. Evidence, § 248. In 2 C. J. S., Adverse Possession, p. 828, it is said: "Declarations of a person in possession of land which show his claim of ownership are admissible as evidence of the hostility of his possession." This court has frequently held that the declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession. Seawell v. Young, 77 Ark. 309, 91 S. W. 544; Waldrop v. Ruddell, 96 Ark. 171, 131 S. W. 670. Moreover, if error was committed in this connection in the instant case, it was invited by appellants. In response to questions by his counsel, appellant Thacker testified that appellees were claiming lands south of a certain line they had staked, which included the lands in controversy. The trial court, in Instruction No. 8, limited the jury's consideration to those statements made while appellees were in actual possession of the lands and there was no error in the admission of this evidence.

The trial court sustained appellees' objection to the introduction of title records from the government to appellants' lessor, Lester Kent. Appellants insist that this was error, since appellees in their answer alleged that appellants' lessor was without title to the property. The principal issue before the jury was whether appellees entered upon and held the lands under a just claim of title or ownership and the testimony was directed to these issues. Appellees made no claim of record title to the property and their right of possession was based entirely on adverse possession, which, if established, would give them the right to possession regardless of the status of the record title. As previously stated, evidence of title is admissible only for the purpose of proving the right and extent of possession and is otherwise inadmissible under the statute. Where evidence is competent for a specific purpose and otherwise incompetent, it is the duty of the party offering the same to request the court to admit the testimony for the purpose for which it is competent. Kansas City Southern Ry. Co. v. Leslie, 112

Ark. 305, 167 S. W. 83, Ann. Cas. 1915B, 834.[1]  The trial court would doubtless have admitted this evidence, if appellants had specified the purpose for which it was offered, but it. did not amount to prejudicial error to exclude it in the absence of such request.

It is next argued that error was committed in the giving of the court's instructions Nos. 3, 4, and 5. The principal objection to these instructions now, as on the former appeal, is that there was no competent evidence to support the giving thereof. These instructions were given at the first trial under evidence which is substantially the same as that produced on the second trial. We held on the former appeal that there was no error in the refusing or giving of instructions and that holding is binding as the law of the case on this appeal insofar as these instructions are concerned. *Stortz* v. *Fullerton*, 185 Ark. 634, 48 S. W. 2d 560, and cases there cited.

In addition to the instructions given at the first trial the court, at appellees' request, instructed the jury as follows: "You are instructed that the expression, 'Claim of title', should be construed to mean a claim having some appearance of legality, and not a mere claim without the appearance or pretense of anything to base it upon." Appellants offered other instructions defining the phrase "just claim of ownership" as used in other instructions and it is argued that the instruction given at the request of appellees was not sufficiently full and complete. The law as stated in the instruction given was approved by this court in Towell v. Etter, 69 Ark. 34, 59 S. W. 1096, 63 S. W. 53. The court is not required to give multiple instructions on one issue. The gist of the instructions offered is that a "just claim of ownership" is equivalent to a "just title". While the court might well have given one of the requested instructions, we hold that a refusal to do so did not constitute reversible error.

Appellants also insist that the court erred in refusing to instruct the jury that it could not consider any evi-

---

[1] This case was reversed by the U. S. Supreme Court on another point in *Kansas City Southern Ry. Co.* v. *Leslie*, 238 U. S. 599, 35 S. Ct. 844, 59 L. Ed. 1478.

dence of appellees' claim of adverse possession prior to March 3, 1941, the date of the default ejectment judgment against Steve Hicks. It is noted that the writ of ejectment issued upon this judgment was never served and that appellees were within a few months adjudged insane by the probate court and thereby removed from the lands. Since only the right to possession based on a just claim of ownership, and not title to the property, is involved here; and since the circumstances in the record before us indicate the possibility of appellees' insanity at the time of the default judgment against Steve Hicks, we conclude that the trial court did not err in refusing to give the requested instruction, which would have amounted to a peremptory finding for appellants on the whole case. As heretofore indicated, the judgment here is not *res judicata* to an action in ejectment.

It is finally insisted that the verdict of the jury was so indefinite and uncertain that a judgment could not be rendered thereon; and that the court invaded the province of the jury by determining the description of the property in the judgment. Appellants duly objected to the following form of verdict submitted to the jury in the event of a finding for appellees: "We, the Jury, find for the defendants for restitution of the property claimed by them and assessed their damages at........................ Dollars." Appellants requested and the court refused to submit in lieu of the form above, the following: "We, the Jury, find for the defendants for the restitution of the following property :................and assess their damages at................Dollars." The jury used the form submitted in returning their verdict.

Appellants earnestly insist that the boundaries of the land claimed by appellees cannot be ascertained from the evidence and they point to the different estimates made by witnesses as to the acreage claimed and possessed by appellees. The burden was upon appellants as plaintiffs to prove their cause of action. In the discharge of this burden it was shown by appellant Thacker and another witness that appellees were holding and claiming lands which included the Frl. N ½ of SE ¼ of Sec. 29,

Township 18 North, Range 8 East, which is the description used in the judgment. It is true that witnesses for appellees gave different estimates of the acreage claimed by appellees. These estimates varied from 40 to 120 acres. Appellee, Tommie Hicks, testified that they were claiming "about 40 acres".

Appellants rely on the case of Russell v. Webb, 96 Ark. 190, 131 S. W. 456. That case involved the sufficiency of a verdict in an ejectment suit. The court said: "A verdict should be definite and certain and free from obscurity, but it is not necessary that there should be any absolute precision in the wording of the verdict. If the meaning of the jury can be clearly collected from the verdict, it ought not to be set aside. It is the settled rule that the verdict should be construed liberally, with the view of ascertaining the meaning of the jury and supporting their verdict. And if the issue presented by the pleadings has been substantially decided by the jury, and their meaning can be satisfactorily collected from their verdict, then it is the duty of the court to mould it into proper form by its judgment . . .

"A verdict should show sufficiently what has been awarded to the party in whose favor it has been rendered; and where land is awarded, it should not be so uncertain that a writ of possession could not be issued on it and executed. But the description is sufficient where it is reasonably certain, or where it can be made certain, so that the land can be identified. This certainty may be established by reference to monuments upon the ground or to some recorded map or by some well known and understood manner of location." When the testimony is considered in the light most favorable to appellees and the rules as above stated, we think it sufficiently definite to show that appellees occupied, claimed and exercised dominion over the lands described in the judgment, which correctly reflects the meaning of the jury.

We find no prejudicial error and the judgment is affirmed.