ECONOMY INN & SUITES and CCMSI *v.*
Nimisha JIVAN

CA 06-158                                        253 S.W.3d 4

Court of Appeals of Arkansas
Substituted opinion delivered March 14, 2007*

*Michael E. Ryburn*, for appellants.

*Harrelson, Moore & Giles, LLP*, by: *Greg Giles*, for appellee.

SAM BIRD, Judge. In a previous opinion, *Economy Inn & Suites v. Jivan*, delivered Dec. 6, 2006, we affirmed the decision of the Workers' Compensation Commission finding that Nimisha Jivan was performing employment services at the time of the accident that caused her death and awarding benefits to her statutory beneficiaries.[1] Appellants filed a petition for rehearing. After careful reconsideration of this case, we grant appellants' petition and issue this substituted opinion reversing the decision of the Workers' Compensation Commission.

---

* REPORTER'S NOTE: The original opinion was handed down December 6, 2006.

[1] *See* Ark. Code Ann. § 11-9-527 (Repl. 2002).

Nimisha Jivan and her husband worked for appellant Economy Inn & Suites in Hope: Nimisha was the assistant manager, and her husband was the manager. On February 17, 2003, Nimisha died as a result of smoke inhalation when a fire broke out at the hotel. Nimisha's husband and two children claimed that the accident happened while Nimisha was performing employment services and that they were entitled to death benefits pursuant to Ark. Code Ann. § 11-9-527. Her employer and its insurance carrier, CCMSI, denied benefits, claiming that Nimisha was not performing employment services at the time of the accident.

All the evidence before the Commission in this case was submitted by the parties through stipulations. The parties stipulated to the following facts:

> [Nimisha Jivan] was employed as the assistant manager for the respondent-employer, and in that capacity she and her husband, the hotel manager, were provided with a room in the hotel in which to live on the premises to carry out their responsibilities as employees of the hotel; that on February 17, 2003, a fire occurred at the hotel, causing [Nimisha's] death; that [Nimisha] is survived by her widower, Jack Jivan, and two minor children . . . . [T]hat on February 17, 2003, [Nimisha] was off duty and was in the bathroom of the hotel room provided by the respondent, changing her clothes to go to a gym to exercise when a fire occurred at the hotel; that she was not able to escape the fire and died as a result of smoke inhalation-; that although [Nimisha] was off duty at the time her death occurred, she and her husband were always considered to be on call to address any hotel related issues, which is at least one of the reasons she and her husband were provided a room in the hotel there on the premises.

The administrative law judge found that Nimisha was engaged in employment services at the time of her fatal injury and that her injury arose out of and in the course of her employment, and he awarded benefits to her husband and two children. The Commission adopted the decision of the law judge, including all findings of fact and conclusions of law. Appellants filed this appeal.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Sapp v. Phelps Trucking, Inc.*, 64 Ark. App. 221, 984 S.W.2d 817 (1998). This court must affirm the decision of the

Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Gen. Elec. Railcar Repair Servs. v. Hardin*, 62 Ark. App. 120, 969 S.W.2d 667 (1998). The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

The pivotal issue in this case is whether Nimisha was performing employment services at the time of her death. A compensable injury is defined in Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002) as "[a]n accidental injury . . . arising out of and in the course of employment. . . ." A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Repl. 2002).

While the statute does not define the terms "in the course of employment" and "employment services," the supreme court has held that an employee is performing "employment services" when he or she is "doing something that is generally required by his or her employer." *Pifer v. Single Source Transp.*, 347 Ark. 851, 857, 69 S.W.3d 1, 4 (2002) (quoting *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 478, 6 S.W.3d 98, 100 (1999)). We use the same test to determine whether an employee is performing "employment services" as we do when determining whether an employee is acting within "the course of employment." *Id.* The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.*

Here, based solely upon findings that "[Economy Inn's] purpose and interest was advanced by [Nimisha's] frequent and regular presence on the premises" and that Nimisha was "on call" twenty-four hours a day, the Commission concluded that her estate had proven by a preponderance of the evidence that she was engaged in employment services at the time of her fatal injury. We disagree with the Commission.

We have held that an injury is not compensable where an employee is performing an activity that is merely for the purpose of

attending to his personal needs. In *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004), we held that a truck driver, who was "off the clock" but "on-call" in a motel room provided by his employer and was injured while turning on a light switch in the bathroom, was not performing employment services where there was no evidence that his entry into the bathroom was for any reason other than to attend to his own personal needs. In *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999), we affirmed the Commission's decision that a shower was not inherently necessary for the performance of the job a trucker was hired to do. In *Kinnebrew*, a truck driver who showered at a truck stop while he was off-duty but on the road and awaiting further instructions from his dispatcher slipped and fell in the shower stall. We held that he was not performing employment services because showering was not "inherently necessary" for the performance of the job that he was hired to do. *Id.* at 92, 989 S.W.2d at 543.

■ In this case, Nimisha was in the bathroom changing clothes to go exercise, an activity involving attention solely to her personal needs. The fact that she was on call in her living quarters does not necessitate a finding that every activity in which she engaged was inherently necessary to her job. Nimisha was certainly entitled to enjoy life in her home at the hotel beyond her responsibilities as the hotel's assistant manager. The parties' stipulation contained no evidence that she was required to remain on the premises at all times, or even most of the time, for the benefit of her employer. We cannot see how changing clothes to go exercise at a gym constituted an activity that carried out her employer's purpose or advanced its interest any more than any other personal activity in which an employee such as Nimisha might have engaged while in her room at the hotel. Under the dissent's reasoning, employers would be required to extend workers' compensation coverage to every personal activity in which an employee such as Nimisha might have engaged while in her room at the hotel, including cooking, eating, washing dishes, watching television, dancing, sleeping, or falling out of bed. We disagree and hold that fair-minded persons with the same facts before them could not have reached the conclusion that Nimisha was performing employment services at the time of her death, and we reverse the Commission's decision awarding benefits.

Reversed and remanded for the entry of an order consistent with this opinion.

PITTMAN, C.J., and HART, GLADWIN, MARSHALL, and MILLER, JJ., agree.

GLOVER, VAUGHT, and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I dissent because the majority completely ignores the applicable precedent relied upon by the Commission in awarding benefits and abandons our standard of review of administrative decisions. The Commission found that performing the activity *on the premises* while *on call* was the critical focus of the analysis. In reaching its decision, the Commission relied upon our opinion in *Privett v. Excel Specialty Products*, 76 Ark. App. 527, 69 S.W.3d 445 (2002). In *Privett*, we explained that the concept of employment services encompasses the performance of incidental activities that are inherently necessary for the performance of the primary activity. This court reasoned that the fact that a worker is not directly compensated for the activity engaged in when an accident occurs is not controlling as to whether the worker was performing employment services. *Id.* We further recognized that an employee preparing his truck for a cross-country drive by equipping it with items necessary for the efficient performance of his job was performing an incidental activity that was inherently necessary for the performance of his primary employment activity regardless of the fact that the employee was performing the tasks on his day off. *Ray v. Wayne Smith Trucking*, 68 Ark. App. 115, 4 S.W.3d 506 (1999) (cited in *Privett*, 76 Ark. App. at 532, 69 S.W.3d at 449).

In reaching its decision, the Commission relied upon our reasoning in *Privett* and applied its reasoning to the stipulations submitted by the parties. The entire case was submitted on stipulated facts that included the following:

3. Nimisha Jivan was employed as the assistant manager for the respondent employer on February 17, 2003 and in this capacity she and her husband, who was the hotel manager, were provided with a room in the hotel to live on the premises to carry out their responsibilities as employees of the hotel.

4. On February 17, 2003 Mrs. Jivan was off duty and was in the bathroom of the hotel room provided by the respondent changing her clothes to go to a gym to exercise when a fire occurred

at the hotel and Mrs. Jivan was not able to escape the fire and died as a result of smoke inhalation.

5. Although Mrs. Jivan was off duty at the time her death occurred, theparties agreed and stipulate that she and her husband were always considered to be on-call to address any hotel related issues, which is at least one of the reasons she and her husband were provided a room in the hotel there on the premises.

From these stipulations, the ALJ and Commission distinguished Ms. Jivan's situation from the truck driver in *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004), relied upon by the majority. They reasoned:

> The instant claimant, in contrast [to the claimant in *Cook*], was on the employer's premises at the time of her injury and was expected to reside on the premises for the employer's convenience. The respondent-employer clearly derived a significant benefit from the claimant's regular and continual presence on the premises of the hotel.
>
> The concept of employment services encompasses the performance of incidental activities that are inherently necessary for the performance of the primary activity. *Privett v. Excel Specialty Prod.*, 76 Ark. App. 527, 69 S.W.3d 445 (2002). Given the claimant's responsibilities to her employer, her residing on the premises and spending as much time as possible on the premises was inherently necessary for the performance of her primary activity, managing the hotel. An employee is performing employment services when her injury is sustained within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Pifer v Single Source Transportation*, 347 Ark 851, 69 S.W.3d 1 (2002). It is plain from the record that the employer's purpose and interest was advanced by the claimant's frequent and regular presence on the premises. She was within the space boundaries of her employment, and given that she was "on-call" 24 hours per day, she was within the time boundaries as well."

The Commission found that "[t]he stipulations agreed to by the parties are reasonable and are hereby accepted as fact." We cannot merely ignore the parties' stipulations. A stipulation is "an agreement between the attorneys respecting the conduct of the

legal proceedings." *Dinwiddie v. Syler,* 230 Ark. 405, 323 S.W.2d 548 (1959). That agreement is the equivalent of undisputed proof and leaves nothing for the fact finder to decide as to the stipulated matter. *Brown v. Keaton,* 232 Ark. 12, 334 S.W.2d 676 (1960). We held in *Arkansas Louisiana Gas Co. v. Grooms,* 10 Ark. App. 92, 661 S.W.2d 433 (1983), that when the parties stipulate to certain facts, neither the ALJ nor the Commission may ignore that stipulation and decide the matter on an issue that, because of the stipulation, had not been fully developed by the parties or upon that they had not introduced proof. The only exception is when the ALJ or Commission gives notice of their intent to do so and affords an opportunity to offer proof on that issue. *Id.* Here, the ALJ accepted these stipulations as facts, and the Commission in turn explicitly accepted and adopted the ALJ's findings of fact in its decision.

This court, on a recent appeal based upon a stipulation, was compelled to reverse the decision of the Commission when it ignored the stipulation it had accepted. *See Powers v. City of Fayetteville,* 97 Ark. App. 251, 248 S.W.3d 516 (2007). The case references our earlier holding that reversed the Commission's denial of benefits. In that earlier case, the Commission rejected audiological testing to establish objectively a compensable injury when a stipulation independently established the hearing loss. We remanded for a determination of fact concerning a causal relationship between the hearing loss and the employment.

Similarly, we cannot ignore the stipulations that the parties submitted and the Commission accepted. The critical issue in this case, as in any Workers' Compensation claim, is whether the employee was performing "employment services" at the time of her injury. *Pifer v. Single Source Transp.,* 347 Ark. 851, 69 S.W.3d 1 (2002); *Collins v. Excel Specialty Prods.,* 347 Ark. 811, 816, 69 S.W.3d 14, 18 (2002); *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care v. Pettey,* 328 Ark. 381, 944 S.W.2d 524 (1997). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Pifer, supra; White, supra; Olsten Kimberly, supra.* The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100. *See also Wal-Mart Stores, Inc. v. King,* 93 Ark. App. 101, 216 S.W.3d 648 (2005); *Ark. Meth.*

*Hosp. v. Hampton,* 90 Ark. App. 288, 205 S.W.3d 848 (2005). The critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Collins, supra; see also Matlock v. Ark. Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001).

The Commission appropriately directed its analysis to this critical issue of whether the employer's interests were being directly or indirectly advanced at the time Ms. Jivan sustained the injury that caused her death. The Commission found that Ms. Jivan was on the employer's premises at the time of her injury and was expected to reside on the premises for the employer's convenience. It further found that the employer's purpose and interest were advanced by Ms. Jivan's frequent and regular presence on the premises. The Commission therefore concluded that Ms. Jivan was within the space boundaries of her employment. Given that Ms. Jivan was on call twenty-four hours a day, it also found that she was within the time boundaries of her employment as well. In reaching its decision, the Commission properly distinguished the facts of this case from that of *Cook, supra,* in which the employee was injured in a private motel neither owned nor affiliated with the employer, there was no indication that the employee was required to stay at this hotel, or that his staying in that hotel advanced his employer's interest, but rather, the room was provided solely for the employee's convenience.

Despite the Commission's reliance on our precedent in *Privett,* the majority makes no mention of the case to explain why the Commission's reliance upon it was in error. The closest the majority comes to addressing the basis upon which the Commission rendered its decision is in the statement: "The fact that she was on call in her living quarters does not necessitate a finding that every activity in which she engaged was inherently necessary to her job." Nothing in our review procedures permits this court to reverse the Commission's decision because the established fact "does not necessitate a finding." We are to examine the facts and determine whether fair-minded persons with the same facts before them could not have reached the conclusion. Furthermore, the Commission's finding was not so broad as to find that every activity Ms. Jivan may have engaged in upon the premises was inherently necessary to her job. The Commission's decision was properly limited to the facts before it.

The majority's reversal of the Commission's decision ignores the fact that the parties stipulated that Ms. Jivan's primary

employment activity was the management of the hotel and that despite the fact that she was off duty at the time of her death, she was nevertheless on call and on the premises in the space provided to her to perform her primary employment activity. The majority improperly invalidates the Commission's finding that given Ms. Jivan's responsibilities to her employer, her residing on the premises and spending as much time as possible on the premises was inherently necessary for the performance of her primary activity, managing the hotel. An employee is performing employment services when her injury is sustained within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Pifer, supra*. The Commission's analysis is well-reasoned and supports its decision.

In this case, the majority's inability to see how the employee's changing clothes advances her employer's interest completely ignores the focus of the Commission's finding. The Commission focused on the fact that Ms. Jivan was engaged in a personal activity on the employer's premises because the employer derived a benefit from her continued presence on the premises. The majority fixates on the details of the activity engaged in by Ms. Jivan while on the employer's premises, rather than on the fact that she was on the premises, on call, and that her presence and on-call status advanced the employer's interest. This misplaced focus negates the parties' stipulations. It ignores the stipulation that Ms. Jivan and her husband were provided with a room in the hotel to live on the premises to carry out their responsibilities as employees of the hotel. It renders void the parties' express stipulation that although she was off duty at the time her death occurred, she and her husband were always considered to be on-call to address any hotel related issues. It obliterates the stipulation that at least one of the reasons she and her husband were provided a room in the hotel on the premises was for her to be available to provide management services. The Commission found that the employer derived a significant benefit from Ms. Jivan's regular and continual presence on the premises of the hotel. Given the parties' stipulations, the Commission's conclusion is well taken.[1]

---

[1] The majority opines that "[u]nder the dissent's reasoning, employers would be required to extend workers' compensation coverage to every personal activity in which an employee such as [Ms. Jivan] might have engaged." The Commission merely rendered its decision based on the parties' stipulations and applicable law. The review of this court must

Accordingly, I dissent.

GLOVER and VAUGHT, JJ., join.

always be whether the evidence supports the Commission's decision, not whether we agree with the disposition of the case. The majority impermissibly imposes a different result because it disagrees with the Commission. It then justifies its disagreement by listing isolated activities and suggesting that affirmance of the Commission's decision would require as a matter of law that every personal activity engaged in by an employee on the premises would be deemed as advancing an employer's interest. Affirming the Commission's decision would not overrule our extensive case law demanding a fact intensive analysis of the statutory criteria.